IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.   17- _____ |
| | : | |
| v. | : | DATE FILED: _____ |
| | : | |
| PAUL SMITH | : | VIOLATIONS:<br>18 U.S.C. § 1341 (mail fraud – 1 count)<br>15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R.<br>§ 240.10b-5 (securities fraud - 1 count)<br>Notice of forfeiture |

## INFORMATION

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

### Background

1. At all times relevant to this information, defendant PAUL SMITH was a registered representative of a broker dealer (i.e., a stockbroker), employed at various times by different broker dealer firms.

2. In or about 1991, defendant PAUL SMITH formed the Haverford Group, which he promoted as an entity formed to make investments on behalf of its members.

3. Defendant PAUL SMITH solicited some of his brokerage clients to invest in the Haverford Group.

4. Additionally, defendant PAUL SMITH solicited other persons to invest in the Haverford Group, including friends of other Haverford Group investors and persons he met at his country club.

5. Some of these investors were retired and/or elderly.

6. Defendant PAUL SMITH gave some of the persons whom he solicited a "Subscription Agreement & Disclosure Document" for the Haverford Group. That document provided in pertinent part:

> The Haverford Group is a General Partnership which has been formed to make investments. The Partnership's goal is to provide you with a high level of current income and capital appreciation as is consistent with the preservation of capital and the maintenance of liquidity. …
>
> The Partnership intends to participate in stock purchase and dividend reinvestment plans in which securities may be purchased directly from the issuer at a discount to their market value and simultaneously sold to capture the discount in the form of capital gain.

7. From its inception in 1991 until in or about July 2016, investors contributed approximately $2.3 million to the Haverford Group. In that same period, various investors withdrew almost $1.9 million.

## THE SCHEME

8. From in or about 1991 until at least in or about December 2016, defendant

## PAUL SMITH

devised and intended to devise a scheme to defraud investors in the Haverford Group, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

It was part of the scheme that:

9. Defendant PAUL SMITH used only a minimal amount of the investors' contributions to the Haverford Group to purchase stock or to participate in other investment opportunities, and he made no stock purchases or other investments at all after 2011 --

2

although he nonetheless continued to solicit investors for the Haverford Group, and continued to accept investors' contributions to the Haverford Group.

10. Defendant PAUL SMITH used most of the investors' contributions to the Haverford Group to pay other investors' withdrawals from the Haverford Group, and used approximately $247,400 of the investors' contributions for his own personal benefit.

11. On occasions, defendant PAUL SMITH contributed some of his own money to the Haverford Group, which he then used to meet a Haverford Group investor's withdrawal demand.

12. Defendant PAUL SMITH sent individual quarterly account statements via the U.S. mail to the Haverford Group investors. The statements showed the statement date and the name and address of the investor, and presented four columns listing the investor's deposits/credits, withdrawals, and purported account balances, by date. However, the alleged investment gains and the purported account balances were completely fictional.

13. As of September 30, 2016, there were 17 investors remaining in the Haverford Group, whose individual net contributions to the Haverford Group totaled approximately $886,214. Their quarterly statements dated September 30, 2016 reflected purported account balances of tens of thousands, or hundreds of thousands of dollars, per investor. However, as of that same date, the Haverford Group had only minimal investments worth only a few thousand dollars, and a bank account balance of less than $50.

14. Among the persons whom defendant PAUL SMITH solicited to invest in the Haverford Group was A.M., an elderly woman who had initially purchased legitimate investment products in 2009 through a brokerage firm for which defendant SMITH was working.

15. Between approximately 2011 and 2013, defendant PAUL SMITH caused withdrawals totaling $105,000 to be made from A.M.'s account at the brokerage firm. Thereafter, A.M. made contributions to the Haverford Group totaling $105,000.

16. Beginning in or about June 2011, defendant PAUL SMITH sent quarterly account statements from the Haverford Group to A.M. through the U.S. mail. These account statements showed A.M.'s contributions, and also showed that A.M.'s supposed investments were increasing in value.

17. In or about the summer of 2016, A.M. – who had never made any withdrawals from the Haverford Group -- told defendant PAUL SMITH that she wanted to liquidate her investments in the Haverford Group, because she needed money. Defendant SMITH told her that liquidation required 90 days' notice.

18. In or about October 2016, defendant PAUL SMITH sent A.M. her quarterly account statement, which showed a balance of $127,359.58 as of September 30, 2016.

19. In or about late October 2016, after repeated requests by A.M. or her family to withdraw her funds, defendant PAUL SMITH told A.M.'s son that he would give him a check for A.M. for the balance of A.M.'s account. However, when A.M.'s son met defendant SMITH, defendant SMITH stated that all of A.M.'s money was lost in the market. A.M.'s daughter then went to the police.

20.     On or about September 30, 2016, in Wayne, in the Eastern District of Pennsylvania, defendant

**PAUL SMITH**,

for the purpose of executing the scheme described above, and attempting to do so, knowingly caused to be delivered by mail according to the directions thereon, a quarterly account statement from the Haverford Group to A.M., which falsely represented that A.M.'s account balance as of that date was $127,359.58, when, in fact, the Haverford Group's total account balance as of that date was only approximately $48.90, and its investments were worth only approximately $6,000.

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 7, and 9 through 13, of Count One are incorporated herein by reference.

### The SEC and the Securities Law

2. The antifraud provisions of the federal securities laws, including Section 10b of the Securities Exchange Act of 1934, codified at Title 15, United States Code, Section 78j(b), and Rule 10b-5 thereunder, codified at Title 17, Code of Federal Regulations, Section 240.10b-5, prohibit fraudulent activities in connection with the buying and selling of securities.

3. Interests in the Haverford Group that defendant PAUL SMITH marketed and sold were securities as defined by the Securities Exchange Act of 1934.

4. Defendant PAUL SMITH had complete control over the funds contributed by the investors to the Haverford Group, and made decisions concerning the use of those funds without the knowledge or participation of any of the investors.

5. From in or about October 1991 through in or about December 2016, in the Eastern District of Pennsylvania and elsewhere, defendant

**PAUL SMITH**

willfully and knowingly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts

6

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons in connection with purchases, sales, and transactions involving the Haverford Group.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

## THE SCHEME

6. It was a part of the scheme that defendant PAUL SMITH willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with purchases, sales, and transactions involving the Haverford Group, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

7. It was a part of the scheme that defendant PAUL SMITH obtained funds from investors in the Haverford Group under false and misleading pretenses. Some of the means by which defendant SMITH effectuated the fraudulent scheme were as follows:

    a. Defendant PAUL SMITH failed to disclose several important facts

to the Haverford Group investors, including the following:

        i.     Defendant SMITH had made almost no actual investments.

        ii.    Defendant SMITH had used, and intended to use, almost all of the investors' funds to satisfy other investors' requests for withdrawals, or for his personal use.

    b.    Defendant PAUL SMITH made misrepresentations to investors in the Haverford Group, including the following:

        i.     Although the Subscription Agreement & Disclosure Document stated that the Haverford Group was "formed to make investments" and "intends to participate in stock purchase and dividend reinvestment plans," defendant SMITH actually made only minimal investments, and made no investments at all after 2011, despite continuing to solicit new investors for the Haverford Group and to accept new contributions from investors.

        ii.    Although the Subscription Agreement & Disclosure Document stated that "the Partnership cannot assure a profit or protect against a loss," defendant SMITH misrepresented to investor D.G. that investing in the Haverford Group was a "no fail thing"; misrepresented to investor J.J. that there was no risk; and misrepresented to investor M.C. that the Haverford Group had an "almost guaranteed 3 percent return."

        iii.   Defendant SMITH sent quarterly account statements, via the U.S. mail, to Haverford Group investors, which showed account balances and purported investment gains that were fictional.

      c. Defendant PAUL SMITH used approximately $247,400 of the funds from the Haverford Group for personal purposes.

    All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## **NOTICE OF FORFEITURE**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

       1.     As a result of the violations of Title 18, United States Code, Section 1341, and Title 15, United States Code, Sections 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, defendant

**PAUL SMITH**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $886,214.37.

       2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

          (a)    cannot be located upon the exercise of due diligence;

          (b)    has been transferred or sold to, or deposited with, a third party;

          (c)    has been placed beyond the jurisdiction of the Court;

          (d)    has been substantially diminished in value; or

          (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

_____
**LOUIS D. LAPPEN**
**United States Attorney**